[No. 8900.    Department One.    January 7, 1911.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE GRAY, *Appellant*.[1]

LARCENY—EVIDENCE—SUFFICIENCY.  There is sufficient evidence to sustain a conviction for horse stealing, notwithstanding conflicting evidence establishing an alibi, where there was testimony that the horses were in the owner's pasture on May 4th, twenty miles southeast of W., that on May 4th at W. the accused obtained leave of A., the younger, to put four or five horses in the pasture of A. and his father, 12 miles north of W., that the accused and his brother were seen with the four young horses on the road to the pasture May 4th, 5th, or 6th, to which they added an old horse of accused's brother when near the pasture, and the accused notified the elder A. about noon on May 5th that he had turned five horses into the pasture with his son's consent, and the elder A. saw the four young horses there, freshly branded, with an older horse on May 9th, a note book in the accused's possession contained a memorandum evidently in his handwriting to the effect that he "Put four horses in pasture May the 5th, 1909," (the accused denying the writing of the memorandum), and that accused lived near the pasture where the animals were found until May 1st, when he went to work about three miles from the place from which the horses were stolen.

CRIMINAL LAW—TRIAL—INDORSEMENT OF NEW WITNESSES—APPEAL—HARMLESS ERROR.  It is not prejudicial error to permit at the trial the endorsement of new witnesses for the state, where the defendant asked either a continuance or a subpoena for four witnesses, and thereupon the subpoena was issued and all the witnesses appeared in time to testify.

[1]Reported in 112 Pac. 641.

NEW TRIAL—GROUNDS—NEWLY DISCOVERED EVIDENCE—CRIMINAL
LAW. A new trial on the ground of newly discovered evidence is
properly overruled where the evidence was cumulative or immaterial,
or where it was to impeach the truth and veracity of a witness,
witnesses for that purpose having been subpoenaed at the trial and
not called for some reason not disclosed; or on the ground that a
witness was intoxicated while on the stand, no objection having been
made at the time.

Appeal from a judgment of the superior court for Lincoln
county, Neal, J., entered December 28, 1909, upon a trial
and conviction of horse stealing. Affirmed.

*Martin & Wilson*, for appellant.

*C. A. Pettijohn* and *W. T. Warren*, for respondent.

PARKER, J.—The defendant was convicted in the superior
court for Lincoln county of stealing four horses, and has
appealed therefrom to this court. The principal contention
of learned counsel for appellant is that the trial court erred
in overruling their challenge to the sufficiency of the evidence
to sustain the conviction, made by their motion for a directed
verdict and by their motion to set aside the verdict. The
evidence is in serious conflict as to the whereabouts of appel-
lant at the time of, and for a few days following, the taking
of the horses. There is no question as to the fact of the
stealing of the horses by some one at about the time charged.
It appears by the uncontradicted evidence of George Huck,
owner of the horses, that he saw them in his pasture about
twenty miles southeasterly from Wilbur, in Lincoln county,
on the morning of May 4th, 1909, the day they are alleged
to have been stolen; that he missed them a few days later,
and found them in the Aldridge pasture, about twelve or
fourteen miles northerly from Wilbur, on May 24th; that
they had all been branded and one had been castrated since
they were seen by him in his own pasture on May 4th.

The Aldridge pasture is conducted by a father and son,
as a business in pasturing stock of others for hire. The
son stays most of the time in Wilbur, having business there,

while the father had charge of the pasture, living near it, in May. The son testified that he saw appellant in Wilbur on May 4th, when appellant asked if he could put some horses in their pasture, and was told by the son to see his father at the pasture and it would be all right; that appellant then said he would put in four or five head, the son giving his assent; that on the following Sunday, May 9th, he visited his father and saw in the pasture four colts, all of which were freshly branded, and one was freshly castrated. Another witness named Warehime, who lives some ten miles northerly from Wilbur and about three miles from the Aldridge pasture, testified that he saw appellant pass his place on the morning of May 4th, 5th or 6th, with two other men, one being appellant's brother, all on horseback, driving four young horses in the direction of the Aldridge pasture; that they stopped at a pasture about a mile from Warehime's place, got another horse therefrom, and went on; that he could not identify this horse, but that the brother of appellant had a horse in that pasture; that four or five days later he saw the same four young horses in the Aldridge pasture; that they had all been lately branded, and one was freshly castrated. The elder Aldridge, who had charge of the pasture and lived near it, testified that appellant came to his home between 11 and 12 o'clock on May 5th, and said to him, "that he had turned some horses in the pasture, he had seen my son the day before and he told him it would be all right, yes, I told him that was all right;" that appellant said he had turned in four colts and one old horse, and asked to have them looked after; that on the Sunday following, May 9th, he saw four colts in the pasture that he had not seen there before, one being freshly castrated; that Mr. Huck, the owner, came and took the colts away twenty days later. There was introduced in evidence a small memorandum book, admitted to be the property of appellant and containing his signature. The book also contained this memorandum: "Put four horses in pasture May the 5, 1909."

There is a similarity of handwriting between the memorandum and the signature, though appellant positively denied writing the memorandum. The evidence shows without dispute that appellant lived at his sister's up to the latter part of April, in the neighborhood of Warehime's place, and that he went to work for a Mr. Woollen on May 1st, about three miles from the pasture where the owner of the horses last saw them.

This evidence, it seems to us, was sufficient to support the verdict, unless we can hold that the testimony of these witnesses as to appellant's whereabouts at the times stated was so conclusively refuted by the evidence of appellant and his witnesses, tending to show that he was not then at those places, that the minds of reasonable men could not differ upon that question. Appellant's witnesses did testify that he was at Woollen's place, or near there, working for him from May 2d to May 9th, and if those witnesses are to be believed their testimony accounts for his whereabouts during that entire week, and showed that he was not at the places testified to by the state's witnesses. There were a greater number of witnesses who so testified for appellant than there were for the state upon this subject. However, we see nothing lending greater weight to the testimony of defendant's witnesses than to that of the state's witnesses, save the mere fact that they were greater in number. The jury rendered their verdict after seeing and hearing all of the witnesses testify, and the learned trial judge had the same opportunity, which no doubt influenced his decision upon appellant's challenge to the sufficiency of the evidence.

The contentions of learned counsel for appellant that the evidence was insufficient to support the conviction, presents only the question of conflict in, and weight of, evidence. This cannot be determined by us as a matter of law, but must be left to the jury, the tribunal instituted by law to pass upon such questions. *State v. Manville*, 8 Wash. 523, 36 Pac. 470; *State v. Murphy*, 15 Wash. 98, 45 Pac. 729; *State*

*v. Elswood*, 15 Wash. 453, 46 Pac. 727; *State v. Maldonado*,
21 Wash. 653, 59 Pac. 489; *State v. Drusinman*, 34 Wash.
257, 75 Pac. 814; *State v. Hill*, 45 Wash. 694, 89 Pac. 160.

At the commencement of the trial the prosecuting attor-
ney asked permission to endorse upon the information the
name of the witness Warehime and three others as witnesses
for the state.  This was permitted by the court over the
objection of counsel for appellant, and he then stated, "Now
if the court please, since these names have been endorsed
upon the information over our objection, we will either have
to have a continuance or a subpoena for about four wit-
nesses."  The court thereupon permitted the issuing of sub-
poenas for five additional witnesses for the appellant, all of
whom appeared in time to testify before the close of the
trial.  Under these circumstances the action of the court
was not prejudicial error.  *State v. Carpenter*, 56 Wash. 670,
106 Pac. 206.

In support of appellant's motion for a new trial, there
were filed in his behalf several affidavits.  Their purpose,
apparently, was to support the motion in so far as it rested
upon the grounds of accident and surprise and newly dis-
covered evidence.  Some of the affidavits tended to show that
the witness Warehime made statements since the trial in which
he admitted that he testified falsely against appellant upon
the trial.  The making of these statements was denied by
him in a counter affidavit.  Some of the affidavits tended to
show that the witness Warehime could be impeached by the
testimony of witnesses who did not testify at the trial, by
showing his reputation as to truth and veracity.  Accord-
ing to the statement of one of the attorneys for the appel-
lant, some witnesses were subpoenaed and were present at
the trial for the purpose of so impeaching the witness Ware-
hime; but they do not appear to have testified upon that
subject, and the reason thereof does not appear.  Some of
the affidavits tended to show that the witness Warehime was
not at the place he said he was at the time testified to by

him, on or about the morning of May 5th, but at another place. This is denied by him in a counter affidavit, and besides, the time is not fixed with such certainty that renders it impossible for him to have been at both places. In an affidavit made by the younger Aldridge, he expresses the belief that he was mistaken as to seeing the appellant in Wilbur on May 4th and talking to him relative to the pasture, and that since refreshing his memory he believes it was on or about April 30th, and that he would so testify if again called upon the stand. Another affidavit is to the effect that the witness Warehime was intoxicated while on the witness stand. There is nothing else in the record so indicating. The learned trial judge saw and heard him testify, but there is nothing in the statement of facts showing that the trial judge certified to such fact. It, of course, was not a newly discovered fact. So it cannot be brought into the record by affidavit after trial, since it occurred, if at all, at the trial in the presence of the court. *State v. McGonigle*, 14 Wash. 594, 45 Pac. 20. Other facts are stated in these affidavits, but they are of less importance than those above noticed. We are of the opinion that the court did not abuse its discretion in denying the motion for a new trial, in so far as it was based upon these grounds.

Another ground of appellant's motion for a new trial was the alleged misconduct of the prosecuting attorney and his assistants. We are clearly of the opinion there was no such misconduct shown by the record in this regard as calls for the granting of a new trial. We deem it unnecessary to discuss this contention. We have carefully read all of the evidence, together with the affidavits in support of the motion for a new trial, and are unable to find any prejudicial error in the record. So far as appears thereby appellant had a fair trial, and we cannot disturb the verdict and judgment.

The judgment is affirmed.

RUDKIN, C. J., GOSE, MOUNT, and FULLERTON, JJ., concur.